UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20184-CR-GAYLES/D'ANGELO

UNITED STATES OF AMERICA

vs.

SONDY DALES,

    Defendant.
_____/

**REPORT AND RECOMMENDATION
DENYING DEFENDANT'S MOTION TO DISMISS**

**THIS CAUSE** is before the Court on Defendant Sondy Dales's Motion to Dismiss for Pre-Indictment Delay filed on December 27, 2024 (DE 24).[1] The Government filed its response in opposition on January 10, 2025 (DE 30), and Defendant replied on January 17, 2025 (DE 32). The Court held a hearing on the Motion on January 22, 2025, at which it heard the arguments of the Parties (DE 33). Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons stated below, it is respectfully recommended that the Motion to Dismiss for Pre-Indictment Delay (DE 24) be **DENIED**.

    I.    **FACTUAL BACKGROUND**[2]

On April 30, 2024, a Grand Jury sitting in the Southern District of Florida returned a two-count Indictment against Defendant (DE 3). In Count One, Defendant is charged with Delivery of

---

[1] This Motion was referred to the undersigned Magistrate Judge for a Report and Recommendation on January 3, 2025 (DE 26).

[2] As discussed further below, the facts are taken from Defendant's Motion, Reply, and proffers to the Court. The Government disputes some of these facts (*see* Jan. 22, 2025 H'rg Tr. 48-50).

Firearms and Ammunition to a Common Carrier Without Written Notification, in violation of Title 18, United States Code, Section 922(e) (*id.*). In Count Two, Defendant is charged with Smuggling Goods from the United States, in violation of Title 18, United States Code, Section 554 (*id.*). The Indictment was returned within the five-year statute of limitations for these offenses. 18 U.S.C. § 3282(a).

### A. The Investigation and Indictment

Defendant was born in Cap-Haitien, Haiti and emigrated to the United States in 2007 (DE 24 at 3-4). He became a naturalized United States citizen that same year (*id.* at 5). Since that time, Defendant has continued to visit Haiti every year (*id.*). The charges in the Indictment stem from a shipment in January 2020, whereby Defendant allegedly shipped three firearms to Cap-Haitien, Haiti without declaring the nature of the shipment (*id.* at 6). The shipment was sent to Defendant's wife at the time, Fabiola Metellus (*id.*). Upon arriving in Haiti in March 2020, the shipment was seized by Haitian authorities, and Ms. Metellus was arrested (*id.*). Pursuant to the investigation, in November and December 2020, the Government subpoenaed wireless communications providers and obtained records for the firearms (*id.* at 6-7). Law enforcement interviewed Defendant regarding the shipment on December 3, 2020 (*id.* at 7). According to Defendant, no investigative steps were taken after June 22, 2021, until law enforcement interviewed Defendant's live-in partner, Cindy Timaitre, in April 2024 (*id.*). The Government returned the Indictment on April 30, 2024, and Defendant was interviewed a second time in May 2024 (*id.*; DE 3).

### B. The Changing Landscape of Haiti

It is beyond dispute that since 2021, Haiti has experienced a significant period of instability. On July 7, 2021, Haitian President Jovenel Moise was assassinated at his home in Haiti (DE 24 at 8). Since that time, the political and socio-economic environment has continued to

deteriorate and violence has increased, leading to the Prime Minister of Haiti declaring a state of emergency on March 3, 2024 (*id.*). Beginning on April 10, 2024, internet disruptions were reported in Haiti's major cities, and two days later, a Transitional Council was installed to hold executive power (*id.* at 8-9). On October 24, 2024, the United States evacuated non-emergency personnel from the embassy in Haiti following a United Nations helicopter hit by gang-related gunfire (*id.* at 9). Widespread electrical and internet outages were reported in November 2024, leaving significant portions of the country without power and access to electronic communications (*id.*). On December 11, 2024, the Federal Aviation Administration extended its ban of commercial airline flights from the United States to Haiti until March 2025 (*id.*).

### C. The Department of Justice's Statements about Haiti

Defendant claims that the United States Department of Justice issued multiple public statements between December 2020 and April 2024, evidencing a policy to pursue investigations involving firearms shipments to the Caribbean (*id.* at 7). For example, in August 2022, Homeland Security Investigations ("HSI") Miami issued a statement regarding its efforts to curb the increased flow of weapons, weapon parts, and ammunition to Haiti and the Caribbean (*id.*). On April 2, 2024, the Department of Homeland Security ("DHS") discussed an initiative to reduce or eliminate the flow of firearms from South Florida to Haiti (*id.* at 7-8). In June 2024, the United States House of Representatives Committee on Oversight and Accountability solicited proposals from then-Attorney General Merrick Garland regarding the importation of firearms from the United States to Haiti, referencing HSI Miami's efforts to crack down on illegal gun smuggling (*id.* at 8). Defendant argues that the public policy to target firearms smuggled into Haiti from the United States led to the Government resurrecting long dormant investigations, like Defendant's (*id.* at 3).

## II.  LEGAL STANDARD

"The limit on pre-indictment delay is usually set by the statute of limitations.  But, the Due Process Clause can bar an indictment even when the indictment is brought within the limitation period." *United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996) (citing *United States v. Marion*, 404 U.S. 307, 323-27 (1971) and *United States v. Lovasco*, 431 U.S. 783, 788-91 (1977)). A defendant must make a twofold showing that "pre-indictment delay caused him actual substantial prejudice and that the delay was the product of a deliberate act by the government designed to gain a tactical advantage." *Foxman*, 87 F.3d at 1222.  "[T]he defendant bears a heavy burden in showing a dismissal is appropriate." *Id.*

Notwithstanding this well-established standard in our Circuit, Defendant argues that the United States Court of Appeals for the Eleventh Circuit's decisions in *United States v. Solomon*, 686 F.2d 863 (11th Cir. 1982) and *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983) "state a lower standard" that calls for "balancing the reasons for the delay against the prejudice that [is] suffered," as referenced in the Fifth Circuit's decision in *United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977) (Jan. 22, 2025 H'rg Tr. 9:17-10:4).  Defendant acknowledges that the Eleventh Circuit's later decisions require a defendant to show both actual, substantial prejudice and the Government's deliberate action designed to gain a tactical advantage.  He argues, however, "the prior panel rule" requires the Court to examine the Government interests at stake, which does not require "deliberate action," and conduct a balancing analysis of those interests with the actual prejudice to the defendant, as described in *Brand* (*id.* 10:5-9; 11:8-19).[3]  Defendant goes so far as to state that the Eleventh Circuit did not require a showing of deliberate action in *Solomon* and

---

[3] "Under [this] rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

*Lindstrom* (*see id.* 11:2-4 ("[T]he requirement of deliberate action does not appear in [*Solomon* and *Lindstrom*] on this issue.")).

These arguments fail for multiple reasons. First, in *Lindstrom*, the Eleventh Circuit plainly stated in its articulation of the standard for pre-indictment dismissal that a defendant is required to show "the delay was the product of *deliberate action* by the government designed to gain a tactical advantage[,]" from which actual prejudice resulted. 698 F.2d at 1157 (emphasis added). Indeed, this same standard continues to be set forth by the Eleventh Circuit in cases following *Lindstrom*.[4] Second, Defendant is not the first to argue that *Brand* supplants the requirement that a defendant show both actual prejudice and deliberate action to gain a tactical advantage. This argument, too, was advanced in *United States v. Barragan* and rejected by the Eleventh Circuit:

> Barragan argues that the district court should have set these precedents aside in favor of a footnote in *United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977). The *Brand* Court—in what an en banc decision of the Fifth Circuit subsequently characterized as "pure dicta," *United States v. Crouch*, 84 F.3d 1497, 1509 (5th Cir. 1996)—suggested that the validity of a claim alleging a violation of the Fifth Amendment due to prosecutorial delay "depends on the due process balancing between the extent of the actual prejudice and the governmental interests at stake." *Brand*, 556 F.2d at 1317 n.7. The problem for Barragan is that this balancing analysis contradicts this Court's consistent post-*Brand* precedent.

752 F. App'x 799, 801 (11th Cir. 2018). The standard articulated in *Lindstrom* and beyond— mandating actual, substantial prejudice resulting from the Government's deliberate action

---

[4] In *Solomon*, the Eleventh Circuit's standard for pre-indictment delay is less clear. The Court acknowledged that some cases in the Fifth Circuit required "a showing of *deliberate delay to gain a tactical advantage*." *Solomon*, 686 F.2d at 871 (emphasis added) (citation omitted). The Court also noted in *Brand*, the Fifth Circuit "held that although a showing of deliberate delay is not required, the appropriate . . . standard of review is to balance the government's legitimate interests in delay against the resulting prejudice." *Id.* at 871-72 (citation omitted). The Eleventh Circuit held, "Even if [the defendant] had made the necessary showing of prejudice-we do not think that he has-he has not demonstrated that the delay was for the purpose of giving the government a tactical advantage." *Id.* at 872.
5

designed to gain a tactical advantage—provides the controlling framework for pre-indictment delay in light of the pertinent Eleventh Circuit decisions.[5]

## III. DISCUSSION

At the outset, the Court addresses Defendant's request for an evidentiary hearing. Defendant made the initial request for an evidentiary hearing in the Motion and renewed his request at the January 22, 2025 hearing. The Eleventh Circuit has held that a defendant is not entitled to an evidentiary hearing on a due process claim for pre-indictment delay. *United States*

---

[5] In the Motion, Defendant asserts another variation of his "lower standard" argument. There, he argues that in *United States v. Foxman*, 87 F.3d 1220 (11th Cir. 1996), the Eleventh Circuit discussed an "alternative lower threshold" that does not require an intentional, or deliberate, act by the Government (DE 24 at 13-15). But, this argument fundamentally mischaracterizes a footnote in *Foxman*, where the Eleventh Circuit addressed whether the deliberate act by the Government needs to be done in "bad faith." *Id.* at 1223 n.2. Specifically, the Court discussed whether "bad faith," meaning "the government acted to delay an indictment, hoping that the delay—in and of itself—would prejudice the defense[,]" is required. *Id.* The Court noted, "[B]ad faith in this sense or in the sense of a subjective sinister motive is not critical to a due process violation for preindictment delay. The critical element is that the government makes a judgment about how it can best proceed with litigation to gain an advantage over the defendant and, as a result of that judgment, an indictment is delayed." *Id.* Importantly, the Eleventh Circuit stated that "intentional government acts designed to obtain a tactical advantage which only *incidentally* cause delay," as opposed to those intentional acts where the "tactical advantage sought *is* the prejudice to the defendant which the government anticipates will flow from the delay," are still necessary. *Id.* (emphasis in original). "The main point is showing *acts done intentionally* in pursuit of a particular tactical advantage: delay (and the prejudice directly caused by the delay) need not necessarily be the tactical advantage sought." *Id.* (emphasis added). Throughout its entire discussion, the Eleventh Circuit maintains that an intentional, or deliberate, act is required, even though "bad faith," as described above, is not. Nothing in *Foxman* abrogates the requirement that the defendant must show deliberate action by the Government to gain a tactical advantage, as set forth in *Lindstrom*.

To the extent Defendant asserts that the Supreme Court's decision in *Lovasco* permits a lesser showing that the Government acted with "reckless disregard of the circumstances," he is incorrect. The same argument was advanced in *United States v. Stoll*, where the Court undertook a thorough analysis of that argument and concluded, "the 'reckless disregard' test urged by [the defendant] has not been adopted—but rejected—by the Eleventh Circuit." No. 10-CR-60194, 2011 WL 939251, at *12 (S.D. Fla. Feb. 16, 2011), *report and recommendation adopted*, No. 10-CR-60194, 2011 WL 765949 (S.D. Fla. Feb. 25, 2011).

6

*v. Farias*, 836 F.3d 1315, 1325 (11th Cir. 2016).  At the January 22, 2025 hearing, the undersigned inquired of Defendant what evidence he would introduce at an evidentiary hearing.  Defense counsel stated that he planned to call a defense investigator, who will testify to the difficulties in communicating with witnesses located in Haiti, the inaccessibility of those witnesses to testify at a trial in the United States, the inability to travel to Haiti from the United States, the difficulty of conducting any defense investigation in Haiti at this time, and the difficulty obtaining documents from Haiti (Jan. 22, 2025 H'rg Tr. 18:25-19:4; 31:25-32:6; 33:17-21).  Additionally, defense counsel will also call an employee at the Haitian Embassy that will testify about the lack of infrastructure and the inaccessibility of Haiti, as well as the specific issues with retrieving documents from Haiti (*id.* at 46:8-11; 47:23-48:4).  Lastly, defense counsel will call the HSI agent, who made the statements in April 2024 to testify about the Department of Justice's change in policy to focus on reducing or eliminating the flow of firearms from South Florida to Haiti (*id.* at 46:11-18; 46:23-47:2; 47:18-21).  Defense counsel stated that he will also cross-examine the case agent about the reasons for the delay in indicting Defendant (*id.* at 13:20-14:1; 38:6-11).

In addressing Defendant's Motion, the undersigned accepts all of Defendant's allegations as true, even though the Government does not concede many of the allegations, especially related to the inaccessibility of Haiti (*see id.* at 48-50).  The undersigned accepts Defendant's proffer that Haiti is completely inaccessible for any meaningful defense investigation.  Specifically, communication with witnesses located in Haiti is extremely difficult, or even impossible in some circumstances, witnesses located in Haiti will not be able to travel to the United States to testify at trial, the defense cannot retrieve documents from Haiti, and members of the defense team cannot travel to Haiti to further the defense investigation.  The undersigned also accepts Defendant's proffer that there was a change in Department of Justice policy that called for prioritizing cases

involving the shipment of firearms from South Florida to Haiti, beginning in at least 2022 and continuing through 2024, due to the deteriorating situation in Haiti and that this change in policy caused the delay in this case. Even after accepting all of these allegations as true, Defendant has not met his burden of showing a due process violation based on pre-indictment delay and therefore, an evidentiary hearing would not assist the Court in deciding the Motion. *See also United States v. Emmanuel*, No. 06-CR-20758, 2007 WL 9705932, at *1 (S.D. Fla. June 20, 2007) (denying request for evidentiary hearing and discovery where Defendant did not show actual and substantial prejudice or deliberate conduct by the Government to gain a tactical advantage).

### A. Pre-Indictment Delay Did Not Cause Actual and Substantial Prejudice.

Turning to the first prong, Defendant has not established actual, substantial prejudice as a result of the Government's delay in charging him. Defendant claims that actual prejudice resulted from the delay in three ways. First, he cannot examine the firearms on which the offenses are based, because over the passage of time, they were not preserved and subsequently lost in Haiti (Jan. 22, 2025 H'rg Tr. 15:24-16:6). Second, Ms. Metellus, Defendant's ex-wife who received the firearms in Haiti, is largely inaccessible to the defense and will not be available to testify at trial (*id.* at 31:12-15). Finally, the customs official who discovered the package containing the firearms in Haiti will not be available to testify at trial (*id.* at 31:18-20; 32:4-5).

The Government recovered three firearms in this case that were intercepted in Haiti. At the start of the January 22, 2025 hearing, defense counsel was under the impression that all three firearms were lost. The Government stated for the first time at the hearing that one of the firearms was recovered and would be available for trial; the other two firearms have been "repurposed" and will not be available for trial (*id.* at 16:21-17:3). Defendant argues that he is not able to inspect the lost firearms and, in turn, not able to present a defense of whether or not the firearms meet the

8

statutory definition (*id.* at 16:2-6; 18:8-12).[6]  In response, the Government asserts that the loss of two of the firearms is more prejudicial to the Government than Defendant, because the Government has the burden of proving at trial that the items Defendant shipped to Haiti were, in fact, firearms (*id.* at 7:21-8:5).  The Government further argues that since it has the burden of proof, the defense benefits from the ability to make arguments that the Government has not carried its burden with respect to the two lost firearms (*id.* at 23:23-24:3).

The Government's arguments about the lost firearms are convincing.  Defendant has one firearm available to inspect and subject to any analysis he deems necessary.  With respect to the two missing firearms, Defendant's assertion that he is prejudiced because he cannot show whether those firearms meet the statutory definition impermissibly shifts the burden of proof.  Of course, Defendant is not required to prove anything at all about the firearms to raise such a defense —he can simply assert it.  As the Government points out, Defendant can argue to the jury that there is insufficient evidence to determine the lost firearms are, in fact, firearms under the statutory definition, precisely because the firearms were lost.  Further, the Government need only present evidence about one firearm listed in the Indictment to sustain the charges, not three.  Defendant can inspect this firearm prior to trial.  As such, the undersigned is not persuaded that the loss of two firearms resulted in actual prejudice to Defendant.

Defendant next contends that he suffered actual prejudice due to the unavailability of Ms. Metellus as a witness at trial.  Ms. Metellus received the package Defendant allegedly sent to Haiti in March 2020 (DE 24 at 6).  She was subsequently interviewed about her involvement in the

---

[6] The Government did not inform defense counsel that one of the firearms was recovered prior to the hearing, and defense counsel candidly conceded that the availability of this firearm "does change the calculus on some level" and "hurts [Defendant's] argument for prejudice in some respects" (*id.* at 30:9-15; 43:2-4).

9

offense, and her statement was provided to Defendant in discovery (Jan. 22, 2025 H'rg Tr. 42:18-19). Ms. Metellus is currently located in Cap-Haitien, Haiti (*id.* at 50:13-17). According to defense counsel, he has been able "to have a conversation with her," and she is not "completely inaccessible" (*id.* at 50:19-21). Nevertheless, for purposes of this Motion, the undersigned accepts defense counsel's proffer that she will not be able to travel from Haiti to the United States to testify as a defense witness at trial and that the defense team has no ability to travel to Haiti to interview Ms. Metellus in-person or further its investigation there.

Defendant relies heavily on Ms. Metellus's unavailability to support his argument of actual prejudice. But, the defense struggled to articulate why Ms. Metellus is an important witness. The undersigned inquired during the January 22, 2025 hearing as to how Ms. Metellus would be important to the defense, to which defense counsel responded:

> It would be a helpful witness for the defense, and I think some of the statements that have been produced in discovery are untrue, and I think impeachment is a valid purpose to call a witness, obviously, and I think it is just kind of that simple, which is that this is a witness that would be helpful for the defense who is inaccessible.

(*id.* at 42:15-23; *see also id.* at 35:11-13 ("I will say this. There are things that she says that we do not believe are true, and those things, I believe, the government would intend to introduce at trial.")).[7] Impeachment is the only reason that Defendant provided to explain the need to call Ms. Metellus as a trial witness (*see also id.* at 19:22-20:4 ("[T]here are statements from [Ms. Metellus] that have been provided in discovery. I cannot ask her were these things that you said or things

---

[7] When the undersigned asked defense counsel why Ms. Metellus is a critical witness for the defense, he stated on two occasions that he did not want to provide that information in a public forum and that he could file an *ex parte* proffer under seal with the Court (*id.* at 35:9-10; 41:17-23). However, counsel did not pursue the request when the undersigned asked about an *ex parte* filing, made his arguments as to why Ms. Metellus was a helpful witness on the record, and did not raise it again or request an opportunity to make the *ex parte* submission at the conclusion of the hearing (*id.* at 42:9-44:8).

10

that you didn't say, which would be relevant for impeachment of an agent, for example, or it might be relevant for a defense. She makes assertions in discovery that I don't know if they're true or false, about the history she's had of receiving packages in Haiti. I can't investigate those facts.")).[8]

In addition, Defendant argues that he suffered actual prejudice based on the defense's inability to call the customs official, who initially recovered the package in Haiti that contained the firearms. Defendant notes that this official has not been identified (*id.* at 20:20-25). Nevertheless, Defendant argues that the customs official's testimony would show "how the package was put together," such that "you could draw an inference as to whether this was intentionally concealed by Mr. Dales" (*id.* at 32:10-14). There were no pictures provided to Defendant in discovery that showed how the package looked before it was opened, and how the firearms were concealed within the package (*id.* at 32:22-23). According to the Government, "[t]he only real description of the manner in which the firearms were shipped comes from the defendant himself when he confesses to putting them in stereo equipment before shipping them over . . . in a post-*Miranda* audio-recorded statement" (*id.* at 33:2-6).

Ms. Metellus and the unidentified customs official's unavailability to testify at trial falls short of the actual, substantial prejudice that Defendant must show to prevail. Importantly, Defendant cannot assert just any prejudice, or simply actual prejudice. The prejudice must be

---

[8] In the reply, Defendant suggested that Ms. Metellus is needed as a witness to assert the defense that she is a licensed dealer, manufacturer, importer, or collector, which negates one of the elements of a violation under Section 922(e) (DE 32 at 2-3). During the January 22, 2025 hearing, defense counsel stated, "Again, I think these are just the examples . . . . And the example of licensure was meant to be a descriptive example of some of the things we would be seeking to investigate" (Jan. 22, 2025 H'rg Tr. 18:21-19:6). Defendant did not persist in the argument that Ms. Metellus was needed as a witness for this purpose. Furthermore, as the Government points out, if the defense wants to show that Ms. Metellus was a licensed dealer, manufacturer, importer, or collector, documentation of that fact can be obtained within the United States (*id.* at 22:7-13); *see also United States v. Zamor*, 746 F. App'x 960, 968 (11th Cir. 2018) (noting "current law indicates that the license mentioned in § 922(e) is a federal firearms license [in the United States]").

*actual and substantial*, which is an "exceedingly high" standard. *Tiemens v. United States*, 724 F.2d 928, 929 (11th Cir. 1984); *see also United States v. Keel*, 254 F. App'x 759, 760 (11th Cir. 2007) ("[T]he prejudice must 'rise to constitutional proportions' in order to support dismissal." (citation omitted)); *United States v. Crouch*, 84 F.3d 1497, 1515 (5th Cir. 1996) ("The prejudice to be shown not only must be actual, rather than presumed or potential, but must also be 'substantial.'" (citation omitted)). Here, Defendant described Ms. Metellus as a "helpful" witness, whose testimony the defense will use for "impeachment" supposedly "of an agent" because at least some of her prior statements "are untrue," or for some other unspecified "defense." These assertions simply do not meaningfully demonstrate to the Court how Ms. Metellus's testimony would aid the defense and why the absence of her testimony results in prejudice commensurate with a constitutional violation. *See Crouch*, 84 F.3d at 1515 ("A mere loss of potential witnesses is insufficient absent a showing that their testimony 'would have actually aided the defense.'" (citation omitted); *United States v. Radue*, 707 F.2d 493, 496 (11th Cir. 1983) (finding the required prejudice was not shown where the defendant made "no proffer as to what purpose the attorney's testimony would have served [and] whether such testimony would have substantially contributed to [his] defense").

The customs official's unavailability, too, does not amount to substantial prejudice. For example, the defense could attempt to locate the individual in the United States, who accepted the package for transport to Haiti. Such an individual may have information about how the package looked before it was shipped. Or perhaps, the carrier that shipped the package possesses records or information related to the intake of the package for shipment. Defendant has not explained why this customs official in Haiti is the only person from which the desired evidence could be gathered, such that his unavailability results in substantial prejudice. *See Crouch*, 84 F.3d at 1515 ("[T]o

12

establish prejudice based on lost witnesses or documents, the defendant must also show that 'the information . . . could not otherwise be obtained from other sources.'" (citation omitted)); *United States v. Corbin*, 734 F.2d 643, 648 (11th Cir. 1984) (same).

Similarly, vague assertions about the inability to gather unspecified Haitian documents, to take unspecified steps to investigate in Haiti, and to communicate with additional unspecified witnesses in Haiti do not persuade the Court that Defendant as suffered actual, substantial prejudice. Generic allegations about lost or inaccessible evidence are not adequate. *See United States v. Butler*, 792 F.2d 1528, 1533-34 (11th Cir. 1986) ("'Speculative allegations, such as general allegation of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice required . . . .'" (citations omitted)); *Barragan*, 752 F. App'x at 801 ("[A]ctual prejudice and not merely 'the real possibility of prejudice inherent in any extended delay,' must be demonstrated." (citation omitted)). Indeed, "a showing of substantial prejudice by the defendant is necessary to a successful pre-indictment delay due process challenge . . . ." *Stoner v. Graddick*, 751 F.2d 1535, 1541 (11th Cir. 1985). Neither the loss of two firearms, nor Ms. Metellus's and the customs official's unavailability, nor Haiti's inaccessibility meets this exacting standard, where Defendant has not explained how the absence of this evidence impairs his ability to mount a meaningful defense. Even if the Court accepts that this evidence is completely unavailable or inaccessible,[9] Defendant has not shown actual, substantial prejudice "such as to impair the fairness of the trial." *United States v. LeQuire*, 943 F.2d 1554, 1560 (11th Cir. 1991).

---

[9] Defense counsel analogized the Haitian witnesses' unavailability to cases where witnesses are dead, arguing that the critical point is the inability to testify (Jan. 22, 2025 H'rg Tr. 36:16-25). Notably, it is unclear whether Ms. Metellus is truly unavailable. Defense counsel stated that he has been in contact with her, which allows the parties to explore the possibility of deposing Ms. Metellus or having her testify remotely (*id.* at 34:7-10; 50:19-21).

13

### B. Pre-Indictment Delay Was Not the Result of Deliberate Action by the Government to Gain a Tactical Advantage.

Under the second prong, Defendant has not shown deliberate action by the Government designed to gain a tactical advantage in this litigation. Defendant claims that the press releases and publicly available information indicate the Department of Justice changed its policy on prosecutions involving the shipment of firearms sometime after the offense, when Haiti became increasingly steeped in greater violence and turmoil (Jan. 22, 2025 H'rg Tr. 30:14-23). According to Defendant, the Government intentionally chose to abandon cases like the instant one and then re-opened them as a result of its new policy, based on the changing environment in Haiti (*id.* at 38:15-18). Defendant further argues that "the tactical advantage is the backdrop of Haiti in the international news and the loss of evidence that is relevant to a defense" (*id.* at 14:18-20).

Defense counsel stated during the January 22, 2025 hearing that the Government has not explained the reason for the delay, and the Government should either be required to offer a non-violative reason, or the defense should be permitted to cross-examine the case agent (*id.* at 30:24-31:3; 39:20-23). But, Defendant can point to no case law that requires the Government to provide Defendant with such evidence. *See United States v. Gayden*, 977 F.3d 1146, 1150 (11th Cir. 2020) ("At best, [the defendant's] position can be summed up as 'the government failed to explain the delay' – which places the burden on the wrong party . . . ."); *United States v. Lamb*, 214 F. App'x 908, 912 (11th Cir. 2007) (rejecting defendant's argument for remand to develop a more detailed record of the Government's reasons for delay where the record was devoid of any evidence that the delay was to gain a tactical advantage); *United States v. Evans*, No. 22-CR-63, 2022 WL 16758553, at *7 (D.D.C. Nov. 8, 2022) ("[The defendant] faults the government for not advancing any reasons for its delay in charging [him]. . . . But that burden rests on [the defendant], not the

government." (citation omitted)).  Defendant must carry the burden of proof in requesting the extraordinary relief of dismissal.

Turning to Defendant's argument, he fails to show that the Government acted to gain a tactical advantage in this case.  Defendant claims that the Government assessed its case and decided not to pursue charges after Defendant was interviewed in December 2020.  Although Defendant has identified deliberate Government action, that action must be designed to obtain a tactical advantage.  The Government clearly could not have foreseen in December 2020 that the President of Haiti would be assassinated approximately six months later, causing the country to experience a long period of violence and instability, such that it would prejudice the defense through the loss of evidence and witnesses.  *See United States v. Mills*, 704 F.2d 1553, 1557 (11th Cir. 1983) (finding the Government "could scarcely have foreseen that [a critical witness] would be murdered before [the defendant] came to trial").

Defendant responds that even if the Government could not have foreseen the turbulence Haiti experienced in 2021, the Government continually declined to prosecute this case in 2022 and 2023.  By 2024, Haiti experienced its greatest period of instability, resulting in massive outages of its communications and government infrastructure and rampant violence across the country.  According to Defendant, at that time, as confirmed by the Department of Justice's change in policy, the Government revived Defendant's case with "the backdrop of Haiti in the international news and the loss of evidence that is relevant to a defense" (Jan. 22, 2025 H'rg Tr. 14:18-20).

Curiously, insofar as the Department of Justice's public statements are probative here, they show that the Government decided to pursue Defendant's prosecution several years after the offense conduct based on a change in Department priorities, not based on a desire to gain a tactical advantage over Defendant.  *See Butler*, 792 F.2d at 1534 (holding the Government did not

deliberately delay prosecution to gain a tactical advantage where it "failed to prosecute the case earlier because it 'wasn't interested' in the case"). Indeed, the Eleventh Circuit has found that "the government directing its resources toward other cases . . . do[es] not demonstrate that the government delayed the indictment in order to gain a tactical advantage." *Barragan*, 752 F. App'x at 801. Moreover, there is no reason for the Government to believe that delaying prosecution in this case would lead to a tactical advantage based on deteriorating infrastructure in Haiti, where the crime occurred in the United States and the evidence of the crime is located in the United States (*see* Jan. 22, 2025 H'rg Tr. 23:6-8 ("So there simply are no Haitian records that are at all relevant to this case. He has no relevant [Haitian] testimony that the defense has been able to identify at any point.")).

Defendant points to *United States v. Barket*, 530 F.2d 189 (8th Cir. 1976), as similar to the instant case, to show "a change in prosecutorial discretion was enough to find not just the second prong but a violation of due process" (*id.* at 47:7-9). In *Barket*, the defendant was charged with making an unlawful political contribution and misapplying bank funds based on a transaction in 1970. 530 F.2d at 190. The Department of Justice began its investigation of the defendant in 1971 but declined prosecution one year later. *Id.* at 191-92. In 1973, the local United States Attorney's Office discovered the loan in an unrelated investigation and indicted the defendant in June 1974. *Id.* at 192. It was later discovered that the Department of Justice did not report the declination of the defendant's case and granted permission to the United States Attorney's Office to indict but did not consider whether new evidence or other factors justified reopening the two-year-old closed case. *Id.* The Eighth Circuit affirmed the district court's dismissal of the Indictment, finding the defendant was denied due process and showed sufficient prejudice to his defense. *Id.* During the delay, six material witnesses died, and other witnesses had faded memory of crucial events to the

16


defense.  *Id.*  The Eighth Circuit held that the defendant's case "present[ed] a unique showing of prejudice sufficient in the circumstances to require dismissal of the indictment."  *Id.* at 193.

Defendant's reliance on *Barket* is misplaced.  First, the Eighth Circuit, using a standard that required a balancing of a combination of factors, found that the Government's failure to communicate between the two components, leading to the decision to prosecute after a two-year delay "*cannot* be characterized as an intentional attempt to gain tactical advantage"—precisely what the Eleventh Circuit requires under the second prong.  *Id.* at 195 (emphasis added); *see also United States v. Zayas*, No. 22-CR-20289, 2023 WL 5096283, at *2 (S.D. Fla. Aug. 9, 2023) ("[T]he thrust of binding precedent in [the Eleventh Circuit] requires the defendant to show both actual prejudice *and* deliberate prosecutorial delay to gain tactical advantage." (emphasis in original) (citation omitted)).[10]  Additionally, the Court focused on the actual, substantial prejudice to the defendant, where *six material witnesses* died during the approximately four-year delay.  *See id.* at 196 (describing the prejudice to defendant as "severe"); *see also United States v. Ross*, No. 13-CR-00638, 2014 WL 3750452, at *3 (N.D. Cal. July 29, 2014) ("One witness of speculative value's potential unavailability does not approach the level of disadvantage the defendants in *Barket* . . . faced.").  Considering the material differences in the facts and the legal standard in *Barket*, that analysis does not persuade the Court here.  Ultimately, Defendant has not shown deliberate action by the Government to gain a tactical advantage in this case.  Nor has Defendant pointed to actual, substantial prejudice resulting from the delay.  Since Defendant has failed to

---

[10] At the time of the decision in *Barket*, "[a] test for judging the reasonableness of pre-indictment delay comparable to that for assessing whether the defendant was prejudiced by the delay has . . . not yet been clearly developed."  530 F.2d at 193.  Rather, the Eighth Circuit "employ[ed] a 'delicate judgment' based upon the circumstances of each case . . . balancing a combination of factors . . . ."  *Id.*  The standard used in *Barket* does not comport with the current standard in the Eleventh Circuit, described herein.

17

carry his burden under the Eleventh Circuit's well-established standard, there is no due process violation that warrants dismissal of the Indictment.

## IV. CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendant's Motion to Dismiss for Pre-Indictment Delay (DE 24) be **DENIED**.

## V. OBJECTIONS

The Parties will have **six (6) days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.[11] Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain error, if necessary, in the interest of justice. *See* 28 U.S.C. § 636(b)(1) (2009); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 6th day of February, 2025.

_____
ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

cc:    All Counsel of Record

---

[11] Due to the upcoming trial date, the Court has shortened the objection period to six (6) days in accordance with Southern District of Florida Local Rule for Magistrate Judges 4(b).